UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

UNITED STATES OF AMERICA,

          - against -

JORDAN ALSTON,

               Defendant.

-----------------------------------------------------------------

**MEMORANDUM & ORDER**
23-CR-510 (MKB)

MARGO K. BRODIE, United States District Judge:

On December 11, 2023, a grand jury indicted Defendant Jordan Alston, charging him with one count of possessing ammunition as a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  (Indictment ¶ 1, Docket Entry No. 10.)  The indictment alleges that on or about November 16, 2023, Alston knowingly and intentionally possessed ammunition, despite "knowing that he had previously been convicted in a court of one or more crimes punishable by a term of imprisonment exceeding one year."  (*Id.*)

On June 13, 2024, Alston moved to dismiss the indictment pursuant to Rule 12(b)(1) of the Federal Rules of Criminal Procedure, on the ground that the indictment under section 922(g)(1) violates his Second Amendment rights.[1]  Alston argues that this charge should be dismissed because *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), rendered section 922(g)(1) unconstitutional.  (Def.'s Mem. 2.)  On July 16, 2024, the government opposed the motion.  (Gov't Opp'n to Def.'s Mot. ("Gov't Opp'n"), Docket Entry No. 26.)  For the reasons explained below, the Court denies the motion.

---

[1] (Def.'s Mot. to Dismiss Indictment ("Def.'s Mot."), Docket Entry No. 23; Def.'s Mem. in Supp of Def.'s Mot. ("Def.'s Mem."), Docket Entry No. 23-1.)

## I.   Background

On May 20, 2022, Alston pleaded guilty to criminal possession of a firearm in violation

of New York Penal Law Section 265.01-b, a felony punishable by more than one year in prison.[2]

(Gov't Opp'n 1; Compl. ¶ 2, Docket Entry No. 1.)  He was sentenced to three years of probation,

and one of the conditions of his probation was that he must consent to searches of his residence.

(Gov't Opp'n 1.)

The government alleges that on November 16, 2023, when probation officers searched

Alston's residence, they found a .380 caliber Hornady cartridge, manufactured outside of New

York, located on the floor underneath a futon.  (*Id.*)  On December 11, 2023, a grand jury

returned an indictment against Alston, charging him with violating 18 U.S.C. § 922(g)(1) in

connection with the cartridge recovered during the November 16 search.  (*Id.* at 1–2; *see also*

Indictment.)

## II.   Discussion

Alston now moves to dismiss the indictment under Rule 12(b)(1) of the Federal Rules of

Criminal Procedure[3] on the grounds that section 922(g)(1) violates the Second Amendment.[4]

(Def.'s Mem. 2.)  In support, Alston argues that under *Bruen*'s new framework for assessing

---

[2]  The Court relies on the factual background as described in the government's opposition
and as charged in the initial complaint against Alston, for the sole purpose of providing context.

[3]  "Before trial, a defendant 'may raise by . . . motion any defense, objection, or request
that the court can determine without a trial on the merits,' including a motion alleging 'a defect
in the indictment.'" *United States v. Aiyer*, 33 F.4th 97, 116 (2d Cir. 2022) (quoting Fed. R.
Crim. P. 12(b)(1), (b)(3)(B)).

[4]  Section 922(g)(1) makes it unlawful for "any person . . . who has been convicted in any
court of, a crime punishable by imprisonment for a term exceeding one year," to "possess in or
affecting commerce, any firearm or ammunition."  18 U.S.C. § 922(g); *see also Gazzola v.
Hochul*, 88 F.4th 186, 200 (2d Cir. 2023) ("Federal law prohibits certain classes of people, like
felons, . . . from purchasing or possessing firearms or ammunition.").

2

Second Amendment challenges, the statute violates the Second Amendment because there is no "historical tradition of prohibiting those with felony convictions from possessing firearms under pain of imprisonment." (*Id.* at 3.)

The government argues that while *Bruen* may have changed how courts are to approach Second Amendment challenges, binding Second Circuit precedent holds that section 922(g)(1) is a constitutional restriction on the rights of convicted felons. (Gov't Opp'n 2–4.) The government further argues that even if *Bruen*'s framework were applied to this case, prohibitions on possession of firearms and ammunition by felons are consistent with the nation's history and tradition. (*Id.* at 4–8.)

"The Second Amendment provides: 'A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.'" *District of Columbia v. Heller*, 554 U.S. 570, 576 (2008) (quoting U.S. Const. amend. II); *see also Gazzola v. Hochul*, 88 F.4th 186, 195 (2d Cir. 2023) (same). In *Heller*, the Supreme Court held for the first time that "the Second Amendment codifies a pre-existing individual right to keep and bear arms for self-defense in case of confrontation — a right that is not limited to service in an organized militia." *Gazzola*, 88 F.4th at 195 (citing *Heller*, 554 U.S. at 592, 595). The Supreme Court clarified, however, that the "individual right to keep and bear arms" under the Second Amendment is "not unlimited." *Heller*, 554 U.S. at 595, 626. In particular, *Heller* should not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," or on other such "presumptively lawful" regulations. *Id.* at 626–27 & n.26. Two years later, in holding that the Second Amendment applies to the states via the Fourteenth Amendment, the Supreme Court reaffirmed its holding in *Heller*, along with its support for "such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.'" *See McDonald v.*

3

*City of Chicago*, 561 U.S. 742, 786 (2010) (quoting *Heller*, 554 U.S. at 626).

In 2022, the Supreme Court announced a new framework for analyzing challenges to restrictions on Second Amendment rights. *See generally Bruen*, 597 U.S. 1. In *Bruen*, the Supreme Court concluded that the second step of the two-step test that "Courts of Appeals ha[d] developed to assess Second Amendment claims" was "inconsistent with *Heller*'s historical approach and its rejection of means-end scrutiny," and established a new standard for applying the Second Amendment. *Id.* at 18, 24. Under *Bruen*, the proper test must be "rooted in the Second Amendment's text, as informed by history," and the government must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 19, 24. After *Bruen*, the Supreme Court decided *United States v. Rahimi*, rejecting a challenge to 18 U.S.C. § 922(g)(8). 602 U.S. ---, ---, 144 S. Ct. 1889, 1894, 1897 (2024). Section 922(g)(8) "prohibits an individual subject to a domestic violence restraining order from possessing a firearm if that order includes a finding that he 'represents a credible threat to the physical safety of [an] intimate partner,' or a child of the partner or individual." *Id.* at 1894 (alteration in original) (quoting 18 U.S.C. § 922(g)(8)). In upholding section 922(g)(8), the Supreme Court held that it was analogous to "surety" and "going armed" laws in effect at the time of the Founding, and thus "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 1899–1901.

Prior to *Bruen* and *Rahimi*, in *United States v. Bogle*, the Second Circuit issued a short per curiam opinion based on *Heller* and *McDonald* upholding the constitutionality of section 922(g)(1) in the face of a challenge similar to the one Alston now raises. 717 F.3d 281, 281–82 (2d Cir. 2013) (per curiam). The court avoided engaging in the type of means-end scrutiny, *i.e.*, strict or intermediate scrutiny, that the *Bruen* Court described as constituting "one step too

4

many" in adjudicating Second Amendment challenges.  *Bruen*, 597 U.S. at 19.  Instead, in *Bogle*,

the Second Circuit's analysis relied on the Supreme Court's caution in *Heller* and *McDonald* that

those decisions should not "be taken to cast doubt on longstanding prohibitions on the possession

of firearms by felons."  717 F.3d at 281 (quoting *Heller*, 554 U.S. at 626); *see also McDonald*,

561 U.S. at 786 (quoting the same).  Relying only on such language, the Second Circuit "join[ed]

every other circuit to consider the issue in affirming that [section] 922(g)(1) is a constitutional

restriction on the Second Amendment rights of convicted felons."  *Bogle*, 717 F.3d at 281–82.

The Court concludes that it is bound by *Bogle*'s holding — one that resulted from

reasoning in *Heller* and *McDonald* that *Bruen* upheld — that section 922(g)(1) is constitutional

under the Second Amendment, and Alston's challenge accordingly fails.  *See Bruen*, 597 U.S. at

9–10 (confirming that its holding was "consistent with *Heller* and *McDonald*"); *id.* at 38–39

(highlighting that its historical inquiry focused on, *inter alia*, whether "tradition limit[ed] public

carry only to those law-abiding citizens who demonstrate a special need for self-defense").

Regardless of whether the Second Circuit chooses to revisit *Bogle*'s holding in light of *Bruen*

and *Rahimi*, this Court remains bound by squarely applicable precedent.  *See United States v.*

*Steinberg*, 21 F. Supp. 3d 309, 319 (S.D.N.Y. 2014) ("[A lower court] should follow the case

which directly controls, leaving to [reviewing courts] the prerogative of overruling [their] own

decisions." (alterations in original) (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*,

490 U.S. 477, 484 (1989))), *abrogated on other grounds by United States v. Newman*, 773 F.3d

438 (2d Cir. 2014).  If and when the Second Circuit eventually considers whether *Bruen* requires

reversing *Bogle*,[5] it will depart from *Bogle* only if it finds some "conflict, incompatibility, or

---

[5] As the government points out, facial and as-applied challenges are pending before the
Second Circuit in *United States v. Thawney*, No. 22-1399 (2d Cir.), and *Zherka v. Garland*, No.
22-1108 (2d Cir.).  (Gov't Opp'n 3 n.1.)

'inconsistency'" between its decision and the Supreme Court's decision in *Bruen*. *See In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 155 (2d Cir. 2015) (alteration adopted) (quoting *Wojchowski v. Daines*, 498 F.3d 99, 109 (2d Cir. 2007)). Where, as here, "the Second Circuit has spoken directly to the issue," this Court is required to follow that ruling "unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit." *United States v. Smith*, 489 F. Supp. 3d 167, 172–73 (S.D.N.Y. 2020) (quoting *United States v. Diaz*, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015), *aff'd*, 854 F.3d 197 (2d Cir. 2017)).

The Court cannot conclude that the Second Circuit will "almost inevitably" overrule *Bogle* in light of *Bruen*. *See id.* As discussed, *Heller* explained that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." 554 U.S. at 626. *McDonald* reaffirmed this statement, describing *Heller* as making "clear" that its holding "did not cast doubt on such longstanding regulatory measure as 'prohibitions on the possession of firearms by felons.'" *McDonald*, 561 U.S. at 786 (quoting *Heller*, 554 U.S. at 626). The Second Circuit in *Bogle* relied on this language to reach its holding, *see* 717 F.3d at 281, and this language has not been undercut by *Bruen*.[6] *Rahimi* further reinforces this conclusion. The *Rahimi* Court first reiterated that the Second Amendment does not prohibit "the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse," and then specified that under *Heller*, "many such prohibitions, like those on the possession of firearms by 'felons and the

---

[6] In addition, the *Bruen* Court abrogated the decisions of several circuit courts — including the Second Circuit's decision in *Kachalsky v. County of Westchester*, 701 F.3d 81 (2d Cir. 2012) — faulting them for applying means-end scrutiny to determine the constitutionality of a firearms regulation. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 19 & n.4 (2022). The Supreme Court did not, however, abrogate *Bogle*. *See id.*

mentally ill,' are 'presumptively lawful.'"  144 S. Ct. at 1901–02 (quoting *Heller*, 554 U.S. at

626–27 & n.26).  *Bogle* did not apply means-end scrutiny and instead relied solely on this same

language in *Heller* that highlighted historical, "longstanding prohibitions on the possession of

firearms by felons."  *Bogle*, 717 F.3d at 281 (quoting *Heller*, 554 U.S. at 626).  *Bogle* therefore

remains good law following *Bruen*.[7]

The Court concludes that Alston's indictment under section 922(g)(1) does not violate his

Second Amendment rights, because under established Second Circuit precedent, "§ 922(g)(1) is

a constitutional restriction on the Second Amendment rights of convicted felons."[8]  *See Bogle*,

---

[7] Other courts in this circuit to have addressed *Bogle* post-*Bruen* have similarly concluded that *Bogle* remains binding precedent.  *See, e.g.*, *United States v. Carter*, No. 23-CR-74, 2024 WL 3785366, at *3 (D. Conn. Aug. 13, 2024) ("*Bruen* did not disturb the precedents upon which *Bogle* relies and *Bogle* therefore remains binding upon this [c]ourt."); *United States v. Pankey*, No. 24-CR-122, 2024 WL 3522138, at *4 (S.D.N.Y. July 23, 2024) (concluding that even after *Bruen*, "*Bogle*'s holding remains binding upon this [c]ourt and [s]ection 922(g)(1) is constitutional on its face"); *United States v. Montanez*, No. 23-CR-186, 2024 WL 3360534, at *3 (E.D.N.Y. July 10, 2024) (same); *United States v. Sanders*, 707 F. Supp. 3d 239, 241 (E.D.N.Y. 2023) ("Second Circuit precedents bind this [c]ourt, including the Second Circuit's decision in [*Bogle*], holding that '[section] 922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons.'" (quoting *Bogle*, 717 F.3d at 281–82)); *United States v. Sternquist*, 692 F. Supp. 3d 19, 26 (E.D.N.Y. 2023) ("[T]his [c]ourt joins the other district courts in this Circuit that have considered post-*Bruen* challenges to [section] 922(g)(1)'s constitutionality in light of *Bogle* in finding that 'nothing in *Bruen*[] alters the rationale of *Bogle*' and, '. . . *Bogle* remains binding precedent within this Circuit on the constitutionality of [section] 922(g)[(1)].'" (fourth and sixth alterations in original) (first quoting *United States v. Garlick*, No. 22-CR-540, 2023 WL 2575664, at *5 (S.D.N.Y. Mar. 20, 2023); and then quoting *United States v. Hampton*, 676 F. Supp. 3d 283, 301 (S.D.N.Y. 2023))).

[8] Alston also argues that the circuits are split on whether section 922(g)(1) remains constitutional as applied to certain categories of individuals, but does not raise an as applied challenge himself.  (Def.'s Mem. 5–6 (first citing *United States v. Jackson*, 69 F.4th 495, 506 (8th Cir. 2023); and then citing *Range v. Att'y Gen.*, 69 F.4th 96, 106 (3d Cir. 2023) (en banc)).) The Court notes, however, that *Range*, in which the Third Circuit found section 922(g)(1) unconstitutional as applied to the defendant before the court, was subsequently vacated by the Supreme Court in light of *United States v. Rahimi*, 602 U.S. ---, 144 S. Ct. 1889 (2024).  *See Garland v. Range*, 144 S. Ct. 2706, 2707 (2024).  The Court therefore declines to address the reasoning in *Range*.  In addition, after *Rahimi*, the Supreme Court vacated the Eighth Circuit

717 F.3d at 281–82.  The Court therefore declines to engage in *Bruen*'s historical analysis.[9]

### III.   Conclusion

For the foregoing reasons, the Court denies Alston's motion to dismiss the indictment.

Dated:  September 9, 2024
        Brooklyn, New York

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

---

decision that Alston cites, *see Jackson v. United States*, 144 S. Ct. 2710, at *1 (2024), and the Eighth Circuit has since issued a second decision reaffirming the constitutionality of section 922(g)(1), *see United States v. Jackson*, 110 F.4th 1120, 1125–29 (8th Cir. 2024) (upholding the constitutionality of section 922(g)(1) as applied to a defendant previously convicted of selling controlled substances).

[9]  Although the Court declines to apply *Bruen*'s historical analysis to section 922(g)(1), other courts in the Second Circuit that have engaged in this inquiry have uniformly found that section 922(g)(1) is constitutional under *Bruen*'s historical analysis.  *See Sanders*, 707 F. Supp. 3d at 243 n.5 (collecting cases); *see also Montanez*, 2024 WL 3360534, at *3; *United States v. Mitchell*, No. 23-CR-198, 2023 WL 8006344, at *4–7 (S.D.N.Y. Nov. 17, 2023); *United States v. Ford*, No. 23-CR-107, 2023 WL 7131742, at *3 (S.D.N.Y. Oct. 30, 2023); *United States v. Abreu*, No. 23-CR-67, 2023 WL 6541302, at *3–4 (S.D.N.Y. Oct. 6, 2023).